```
                    UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF TENNESSEE
                         NASHVILLE DIVISION
```

| | |
|---|---|
| RHONDA THOMPSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| THE TENNESSEE BOARD OF NURSING, ) | |
| BARBARA BRENNAN, R.N., ) | No. 3:05-0580 |
| LORI CASPER, L.P.N., ) | JUDGE ECHOLS |
| WILMETTA COLLIE, L.P.N., ) | |
| WANDA HOOPER, R.N., ) | |
| SHELIA JACKSON-PRIEBEL, ) | |
| DONNA RODDY, R.N., ) | |
| DAVA SHOFFNER, R.N., ) | |
| CHERYL STEGBAUER, R.N., ) | |
| BARBARA WALLACE, L.P.N. and ) | |
| ELIZABETH LUND, all in their ) | |
| individual and official ) | |
| capacities, ) | |
| ) | |
| Defendants. | |

## MEMORANDUM

Pending before the Court is Defendants' Motion to Dismiss (Docket Entry No. 31), to which the Plaintiff has responded in opposition (Docket Entry No. 37) and Defendants have replied (Docket Entry No. 50). The parties treated the Motion to Dismiss as one for summary judgment by filing affidavits and documentary evidence in support of their respective positions. Fed.R.Civ.P. 12 & 56.

### I. FACTUAL BACKGROUND

This is the second Motion to Dismiss this action. The first was summarily denied by Order dated December 22, 2005 (Docket Entry 28) because the Defendants relied on regulations which were not in effect at the time material to the facts of this case. The relevant facts were set forth in the prior Order and are reiterated

1

here (with some amplification to reflect the documents filed with the resubmitted Motion to Dismiss) in order to place the legal analysis into perspective.

Plaintiff Rhonda Thompson ("Thompson") filed this action under 42 U.S.C. § 1983 against the Tennessee Board of Nursing, its Board Members, and its Executive Director, in their official and individual capacities, alleging violation of her Fourteenth Amendment procedural and substantive due process and equal protection rights. Thompson is a licensed registered nurse with a national specialty certification as a gerontological nurse practitioner. She received her Tennessee certificate of fitness to prescribe and/or issue noncontrolled legend drugs in 1997. She has a Master's degree in clinical psychology, and she is a licensed psychological examiner with the State of Tennessee. Thompson has served in community mental health employment positions since 1997.

Between January 2002 and August 2004, Thompson held the position of Assistant Director of Survivor Services at Middle Tennessee State University ("MTSU") Guidance Services (the Counseling Center). Thompson was supervised by Dr. Jan Osborne, a psychiatrist, who performed services for the Counseling Center as an independent contractor. Dr. Margaret Jane Tipps, Director of Guidance Services, supervised Thompson for administrative purposes.

In early June 2004, Dr. Osborne questioned whether she could continue to supervise Thompson because Thompson was not certified as a psychiatric nurse practitioner or psychiatric clinical specialist. Dr. Tipps reviewed a Board of Medical Examiners' Policy on Supervising Physicians and discovered that the specialty of a

2

nurse practitioner and the supervising physician had to be the same. (Docket Entry No. 32, Tipps Aff. ¶¶ 11, 12.) Dr. Tipps consulted with her supervisor, Dr. Deb Sells, and they, through MTSU counsel, James Floyd, sought advice from Elizabeth Lund, Executive Director of the Board of Nursing. Lund provided her oral opinion that, based on her interpretation of the regulations promulgated by the Board of Nursing, a nurse practitioner who is certified in geriatrics is not permitted to practice as a psychiatric nurse practitioner. (Docket Entry No. 32, Lund Aff. ¶¶ 25-29.) Based on Lund's opinion, MTSU terminated Thompson's employment on August 2, 2004, and this suit followed.

## II. STANDARD OF REVIEW

On a Motion to Dismiss for failure to state a claim, the motion is to be converted to a motion for summary judgment so long as "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(b)(6). Where, as here, the parties have not conducted discovery, the court has discretion to convert the motion to one for summary judgment after "assur[ing] itself that such treatment would be fair to both parties[.]" Flynn v. Tiede-Zoeller, Inc., 2006 WL 164811 at *2 (D.C. Cir. 2006); see, Network Elec. Co. v. Network Investments, LLC, 2006 WL 240786 at *1 (D. Nev. 2006)(court is to determine "whether to convert the motion to dismiss into a motion for summary judgment, allow time for proper discovery if necessary, and proceed accordingly"). Thus, a court may refuse to convert a motion to dismiss into one for summary judgment where there has been insufficient discovery. Wyant v. Correctional Medical Serv., 2005

3

WL 2864787 at *2 (D. Del. 2005); <u>Meridian Project Sys., Inc. v. Hardin Const. Co., LLC</u>, 2005 WL 2615523 at *1 n.1 (E.D. Cal. 2005).

In this case, because the parties have not had an opportunity to engage in discovery, the Court finds it would be unfair to convert the present motion into a motion for summary judgment. Instead, the Court will utilize the standards governing a motion to dismiss.

In evaluating the Complaint under Rule 12(b)(6), the Court must accept as true all of Plaintiff's allegations and resolve all doubts in Plaintiff's favor. <u>See</u> <u>Craighead v. E.F. Hutton & Co.</u>, 899 F.2d 485, 489 (6th Cir. 1990). The Court should not dismiss the Complaint unless it appears beyond doubt that Plaintiff cannot prove any set of facts in support of her claims that would entitle her to relief. <u>See</u> <u>id</u>.

Generally, when ruling on a Motion to Dismiss, a Court is limited to looking solely at the allegations of the Complaint. However, even where a document is not formally incorporated by reference or attached to a complaint, the Court may nevertheless consider the document where the document is referred to in the Complaint and is central to Plaintiff's claim. <u>See</u> <u>Greenburg v. Life Ins. Co. of Virginia</u>, 177 F.3d 507, 514 (6th Cir. 1999)(insurance policies that were attached to motion to dismiss were not matters outside the pleadings); <u>Weiner v. Klais & Co.</u>, 108 F.3d 86, 89 (6th Cir. 1997)(pension plan documents attached to motion to dismiss were not matters outside pleading since referenced in complaint and central to claim). The reason for this rule is that "a plaintiff with a legally deficient claim could survive a

4

motion to dismiss simply by failing to attach a dispositive document on which it relied." Weiner, 108 F.3d at 89.

### III. APPLICATION OF LAW

As indicated at the outset, Plaintiff claims that the Board and the individual actors of the Board violated her procedural and substantive due process rights. She also claims their actions violated the Equal Protection Clause.

### A. Procedural Due Process

To state a claim for deprivation of procedural due process, Plaintiff must first show a constitutionally protected property interest. Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Protected property interests are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Id.

Because property rights are not established by the Constitution but by "existing rules or understandings that stem from an independent source such as state law," Board of Regents, 408 U.S. at 477, this Court looks to Tennessee law. The licensing of nurses in Tennessee is governed by T.C.A. § 63-7-101 *et seq*. Specifically, the code provides that upon successful completion of the requisite exam, the Board of Nursing "*shall* issue a license to practice professional nursing[.]" T.C.A. § 63-7-105(a)(emphasis added).

The Tennessee Code also contains provisions for the certification of Nurse Practitioners. Section 63-7-123 provides that, for nurses who meet qualifications specified by the Nursing Board, the Board "shall issue a certificate of fitness" which allows

5

the certified nurses limited authority to write and sign prescriptions.

Other than arguing that employees in Tennessee are generally "at will" and have no right to continued employment, Defendants in this case do not seriously contend that Plaintiff had no property interest in being licensed as a nurse, or even certified as a nurse practitioner. Instead, their argument is that Plaintiff has not been deprived of a property interest because she can still practice as a nurse, and even as a nurse practitioner, so long as it is in geriatrics. Defendants base their arguments on regulations the Board of Nursing promulgated to govern certification of nurse practitioners.

At the time relevant to the events at issue in this case, the pertinent regulations provided:

> (1) In order to be issued a certificate of fitness as a nurse practitioner with privileges to write and sign prescriptions and/or issue legend drugs, a nurse must meet all of the following requirements:
>     (a) Current licensure as a registered nurse under T.C.A. Title 63, Chapter 7;
>     (b) Graduation from a program conferring a master's or doctoral degree in nursing;
>     (c) Preparation in specialized practitioner skills at the master's, post-master's, doctoral, or post-doctoral level. Said specialized practitioner skills education shall include, but not be limited to, at least three (3) quarter hours of pharmacology instruction or its equivalent; and
>     (d) Current national certification in the appropriate nursing area.

Board of Nursing Rules 1000-4-.03.

Focusing on subsection (d), Defendants assert Plaintiff had no right to practice as a psychiatric nurse practitioner since her national certification is in geriatric nursing. For her part,

6

Plaintiff claims that subsection (d) is at best ambiguous and, in any event, Lund's action was arbitrary and capricious since, as the Executive Director of the Board of Nursing, she had no authority to make what effectively amounted to a licensing decision reserved for the Board of Nursing. At this juncture in the litigation, this Court need not tarry on whether Plaintiff or Defendants correctly read the regulations, or whether Lund did, in fact, act outside the scope of her authority.

The Sixth Circuit "has recognized that the Constitution protects a person's choice of careers and occupations." Women's Medical Professional Corp. v. Baird, 483 F.3d 595, ___ (6th Cir. 2006)(citing Wilkerson v. Johnson, 699 F.2d 325, 328 (6th Cir.1983) ("Liberty and property interests are intricately related in our system of political economy, a system based on free choice of careers and occupations, private property, and the right to compete.")). Just because Plaintiff can continue to practice as a nurse practitioner (albeit limited to geriatric patients), does not mean that Defendants' alleged actions in this case did not amount to the deprivation of a property right. Exclusion from an entire profession is not the threshold for determining a deprivation since an individual "has the right to be free from unauthorized actions of government officials which substantially impair h[er] property interest." Green v. McElroy, 360 U.S. 474, 493 n.22 (1959).

Moreover, property interests are not only created by statute or regulation. The Supreme Court "made clear in [Roth] that 'property interests subject to procedural due process are not

7

limited by a few rigid technical forms." Perry v. Sindermann, 408 U.S. 593, 601 (1972). "A person's interest in a benefit is a 'property' interest for due process purposes, if there are such rules or mutually explicit understandings that support h[er] claim of entitlement to the benefit and that [s]he may invoke a hearing." Id.[1]

In this case, Plaintiff alleges that the Board of Nursing, with full knowledge, has allowed not only her but others to practice as nurse practitioners in a chosen specialty, even where their national certification is in a different field. (Verified Complaint ¶ 22). Plaintiff asserts she has practiced as a psychiatric nurse practitioner since 1997, and that when she first received her certification there were no specialities in the psychiatric field. (Id. ¶¶ 8, 23). On a yearly basis, Plaintiff has supplied the Board with the appropriate Notice and Formulary "denoting that she was performing as a nurse practitioner under the supervision of a psychiatrist prescribing psychotropic drugs in a psychiatric setting." (Id.). Between 1997 and 2004 she worked under the supervision of no less than nine psychiatrists. (Id.)

---

[1] Mutual understanding can serve as the basis for a property interest, at least so long as the understandings do not violate the law. Mcenemy v. City of Rochester, 241 F.3d 279, 286-87 (2d Cir. 2001). The Court recognizes Defendants' argument that allowing Plaintiff to work as a psychiatric nurse practitioner would violate the regulations. Leaving aside that the regulations may be subject to different interpretations, Plaintiff's argument is that at the time she received her certificate the same regulations were in effect and there were no psychiatric specialties. Hence, her working as a psychiatric nurse practitioner was in compliance with the regulation. Given the present state of the record, the Court is not in a position to determine the accuracy of these assertions.

8

The Court finds such facts are sufficient to withstand dismissal of Plaintiff's claim that she was wrongfully deprived of her property right to practice as a psychiatric nurse practitioner based upon the mutual understandings of the parties. After all, the "Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits." Roth, 408 U.S. at 576.

Because a state may provide a property interest in authorizing the practice of a certain profession either by law or mutual understanding, the next question becomes whether such rights were clearly established at the time of the challenged action in this case. At the time of Lund's decision, which Plaintiff claims made her license virtually meaningless given her career focus on psychiatric nursing, it was clearly established law that individuals have a property interest in professional licenses. See, e.g., Barry v. Barchi, 443 U.S. 55, 64, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979). It was also clearly established that property interests could be created by mutual understandings. Perry, 408 U.S. at 601; see, Gratsch v. Hamilton County, 12 Fed. Appx. 193, 206 (6th Cir. 2001)(holding that in light of Perry, at time of plaintiffs termination in 1997, "the law was clear property interest could be created by mutual understandings between the parties").

The Complaint alleges sufficient facts to support a claim that Plaintiff's procedural due process rights were abridged when the status of her license was unilaterally changed without a hearing. Therefore, the Motion to Dismiss will be denied with respect to Plaintiff's procedural due process claim.

9

**B. Substantive Due Process**

As a general proposition, a government official performing discretionary functions violates substantive due process rights only when his or her actions "shock the conscience." County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998); Claybrook v. Birchwell, 199 F.3d 350, 359 (6th Cir.2000). In Pearson v. City of Grand Blanc, 961 F.2d 1211, 1222 (6th Cir. 1991), the Sixth Circuit determined that to prevail on a substantive due process attack on a state administrative action, "a plaintiff must show that the state administrative agency has been guilty of arbitrary and capricious action in the *strict* sense, meaning that there is no rational basis for the . . . [administrative] decision." Id. at 1221 (citations omitted, emphasis in original). The court further stated that, "[i]n the federal court . . . [t]he administrative action will withstand substantive due process attack unless it is not supportable on any rational basis or is willful and unreasoning action, without consideration and in disregard of the facts or circumstances of the case." Id. (citations omitted). Accordingly, "it is extremely rare for a federal court properly to vitiate the action of a state administrative agency as a violation of substantive due process," and the "vast majority of such attacks may readily be disposed of[.]" Id. at 1222.

The allegations of the Complaint do not adequately allege a cognizable substantive due process violation. Quite the contrary, the allegations reflect consideration on Lund's part and an arguable basis for her conclusion that a nurse practitioner could not practice outside his or her specialty area. Simply put, Plaintiff

10

alleges a factual basis for Lund's conclusion regardless of whether it was correct or incorrect. Since this Court must "'show great respect' for the local authorities' 'professional judgment,'" id. at 1222, in the context of a substantive due process claim, Plaintiff's allegation that Defendants deprived her of substantive due process will be dismissed.

## C. **Equal Protection**

More than three-quarters of a century ago, the Supreme Court held that "[t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents[.]" Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 445 (1923). Generally, the Equal Protection Clause is invoked when a group is treated differently because they belong to a suspect class, e.g. race or sex. However, the Supreme Court has recognized the Equal Protection Clause is implicated in a "class of one" claim "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)(per curiam).

The paradigmatic class-of-one equal protection claim is that "a public official inflicts a cost or burden on one person without imposing it on those who are similarly situated in material respects, and does so without any conceivable basis other than a wholly illegitimate motive." Jicarilla Apache Nation v. Rio Arriba

11

County, 2006 WL 477104 at *6 (10th Cir. 2006) (citing Lauth v. McCollum, 424 F.3d 631, 633 (7th Cir. 2005)). A "'class of one' plaintiff may demonstrate that government action lacks a rational basis "either by negativing every conceivable basis which might support the government action, or by showing that the challenged action was motivated by animus or ill-will." TriHealth, Inc. v. Board of Commissioners, 430 F.3d 783, 788 (6th Cir. 2005).

In this case Plaintiff alleges facts sufficient to support a viable "class of one" Equal Protection claim. She claims that other similarly situated nurse practitioners worked outside their specialty areas with the full knowledge of the Nursing Board; yet, it was she who was singled out for different treatment. The Court cannot determine as a matter of law that the Defendants' varying treatment had a conceivable basis or conclude that the Board through Lund was not motivated by some animus. Accordingly, dismissal of this claim is not appropriate on the basis of the record as it presently exists.

**D. Qualified Immunity**

The individual Defendants assert that they are entitled to qualified immunity. Qualified immunity protects government officials performing discretionary functions unless their conduct violates a clearly established statutory or constitutional right of which a reasonable person in the official's position would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

The Supreme Court has articulated a two-prong test for evaluating qualified immunity: First, taken in the light most favorable to the party asserting the injury, do the facts alleged

12

show that the official's conduct violated a constitutional right? Second, is the right clearly established? Saucier v. Katz, 533 U.S. 194, 201 (2001).

In this case, the Court has already determined that the facts set forth in the Complaint when construed in Plaintiff's favor, suggest she was deprived of procedural due process and Equal Protection rights and that those rights were clearly established at the time of Defendant Board's challenged action. Accordingly, it would be premature to grant the individual Defendants qualified immunity at this time.

In reaching the conclusion that the individual Defendants are not entitled to qualified immunity at this stage of the litigation, the Court recognizes that courts are encouraged to rule on claims of qualified immunity early in the litigation because such immunity, if it exists, is essentially "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Nevertheless, determining the propriety of the defense of qualified immunity on a motion to dismiss can be problematic because the factual background underlying the official's decisionmaking process is often underdeveloped.

> One court has explained:
>
> The confluence of two well-intentioned doctrines, notice pleading and qualified immunity give rise to this exercise in legal decisionmaking based on facts both hypothetical and vague. The unintended consequence of this confluence of procedural doctrines is that the courts may be called upon to decide far-reaching constitutional questions on a nonexistent factual record, even where, . . . as may be the case here, discovery would readily reveal the plaintiff's claims to be factually baseless."

Kwai Fun Wong v. United States, 373 F.3d 952, 957 (9th Cir. 2004). That is, the imperative to resolve questions of qualified immunity "is in tension with the reality that factual disputes often need to be resolved before determining whether the defendant's conduct violated a clearly established constitutional right." Curley v. Klem, 298 F.3d 271, 278 (3d Cir. 2002).

In this case, the Court finds that there are too many factual questions pending to allow the Court to ultimately determine whether qualified immunity is appropriate for some or all of the individual Defendants. Presumably, discovery will resolve many of those disputes and this Court's denial does not preclude Defendants from raising the issue of qualified immunity in a motion for summary judgment. See, Robbins v. Wilkie, 433 F.3d 755, 764 (10th Cir. 2006)("A district court's decision denying a defendant's motion to dismiss on qualified immunity is not law of the case for purposes of a subsequent motion for summary judgment on qualified immunity" because "a motion to dismiss and a motion for summary judgment do not raise the 'same issues'").

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Docket Entry No. 31) will be granted in part and denied in part. It will be granted with respect to Plaintiff's substantive due process claim but in all other respects will be denied.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE